IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OLIVIA COLLINS,<br><br>            Plaintiff,<br><br>    v.<br><br>ANDREW M. SAUL, Commissioner<br>Of Social Security,<br><br>            Defendant. | Case No. 20 C 2277<br><br>Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

The Commissioner's motion for summary judgment (Dkt. No. 18) is denied. The Court vacates the findings of the Administrative Law Judge and remands this case to the Social Security Administration for proceedings consistent with this Opinion. The Clerk shall remand this case forthwith. Civil case closed.

### I. BACKGROUND

In October 1993, at age 14, Olivia Collins was found to be disabled due to affective disorder. (Admin. R. at 62, 64, 70, Dkt. No. 15-1.) She began receiving benefits as a result of this disorder, which continued into adulthood. In July 2012, when Collins was 33, a periodic review of Collins' benefits explained that Collins experienced "auditory command hallucinations" (*Id.* at 615.) The assessment also noted that Collins reported having "no outside friends and no outside activities." (*Id.*) The report

expressed some skepticism regarding the credibility of these statements, observing that Collins had three children and therefore "must have been at least somewhat socially active." (*Id.*) Ultimately, the assessment concluded that there had been no medical improvement, and Collins continued to be identified as disabled. (*Id.* at 613–15.)

Starting from November 2014 through at least September 2018, Collins was treated by Certified Nurse Practitioner Elsy Joseph, MSN, PMHNP-BC. (*Id.* at 332–54, 427, 492.) Nurse Practitioner Joseph's notes from Collins' four visits from April 2015 to June 2016 reflect largely the same information. (*Id.* at 333, 337, 343, 348.) For each visit, Nurse Practitioner Joseph noted that Collins was consistently taking her medication and not experiencing any side effects. (*Id.*) The notes state that Collins reported that she was not experiencing mood swings, racing thoughts, hallucinations, paranoia, suicidal ideations, or homicidal ideations. (*Id.*) According to the notes, at each visit Collins also reported that she did not feel depressed, worthless, helpless, or hopeless. (*Id.*)

In 2016, Collins underwent another review of her benefits and completed a Function Report, dated June 16, 2016. (*Id.* at 231–39.) Question 5 of the Function Report asks: "How do your illnesses, injuries, or conditions limit your ability to work?" (*Id.* at 231.) In response, Collins only replied "affective disorders." (*Id.*) In

the report Collins stated that she may leave the house once a week to "hang out with friends." (*Id.* at 234–35.) She further explained that she is able to drive but does not do so because she gets dizzy. (*Id.*) Consequently when she leaves the house, she is escorted by her mother. (*Id.*) Collins further explained that she has trouble concentrating and handling stress, and occasionally struggles to get along with others. (*Id.* at 236–37.) Collins also stated that she fears "people I don't know approaching me or talking to me." (*Id.* at 237.)

In connection with the 2016 review of Collins' benefits, Dr. Glen Pittman performed a Psychiatric Review. (*Id.* at 355–68.) Dr. Pittman reviewed Collins' Function Report, as well as the records of Collins' visits with Nurse Practitioner Joseph. (*Id.* at 367.) Dr. Pittman's report, dated August 17, 2016, ultimately concluded that Collins' impairment was "not severe." (*Id.* at 355.)

On August 26, 2016, the Social Security Administration (the "Agency") denied Collins' continuation of benefits, concluding that she had medically improved. (*Id.*) Collins appealed the Agency's cessation of benefits and the matter was referred to a Disability Hearing Officer. Following the notice of cessation of benefits, Collins's mother Margaret Sanders completed a revised Function Report dated September 30, 2016. (*Id.* at 252–64.) This time, in response to question 5, Ms. Sanders reported that Collins

suffers from "auditory and visual hallucinations," and at times "stares into space, talks to herself or someone/something, she sees things." (*Id.* at 252, 257–58.) In contrast to the June report, Ms. Sanders reported that her daughter "does not have any friends." (*Id.* at 255.) Consistent with the June report, Ms. Sanders reported that her daughter "cannot go out alone" and does not leave the home often. (*Id.*) In October 2016, Dr. Russell Taylor also performed a Psychiatric Review. (*Id.* at 391–405.) Dr. Taylor's report relies on the same information as Dr. Pittman, as well as notes from Collins' visit with Nurse Practitioner Joseph on September 21, 2016. (*Id.* at 403.) The records from Collins' September 2016 visit were consistent with Nurse Practitioner Joseph's notes from 2015 and 2016, with one exception. (*Id.* at 379.) In September 2016, Collins reported that she skipped her medication for two days, during which time she started to hear voices. (*Id.*) The voices stopped when she resumed taking her medication. (*Id.*)

Despite considering these additional medical records, Dr. Taylor's notes make no mention of Collins temporarily hearing voices. (*Id.* at 403.) Dr. Taylor also continued to rely on Collins' June Function Report, making no mention of the September report submitted by Ms. Sanders. (*Id.*) Even so, Dr. Taylor broke with Dr. Pittman and concluded that Collins continues to suffer from severe

impairment as a result of her affective disorder. (*Id.* at 391.) Dr. Taylor went on to conclude that despite Collins' impairment, she has the mental capacity to carry out one to two step tasks, sustain a normal workday, make simple work related decisions, interact with others in a setting with reduced social demands, and adapt to simple changes and pressures in the work environment. (*Id.* at 407.)

While the Disability Hearing Officer considered Collins' appeal, she again visited Nurse Practitioner Joseph. Notes from Collins' February 22, 2017 visit state that Collins again reported she was taking her medication with no side effects. (*Id.* at 419.) She also reported no mood swings, racing thoughts, hallucinations, paranoia, suicidal ideations, or homicidal ideations. (*Id.*) According to the notes, Collins also stated that she did not feel depressed, worthless, helpless, or hopeless. (*Id.*)

On May 23, 2017, the Disability Hearing Officer also concluded that Collins had experienced improvement and was no longer disabled. (*Id.* at 94-104.) Collins again appealed the decision and sought review by an Administrative Law Judge ("ALJ"). Two days after the Disability Hearing Officer's decision, Collins saw Nurse Practitioner Joseph. (*Id.* at 409-10.) The notes from this visit largely track with her prior visits, with one exception. (*Id.*)

During the May 2017 visit, Collins reported that she sometimes feels depressed. (*Id.*)

Collins returned to Nurse Practitioner Joseph on August 17, 2017. During this visit she reported feeling more depressed, and at times helpless, worthless, and hopeless. (*Id.* at 538.) She also reported having mood swings and racing thoughts every day. (*Id.*) Collins stated that while she had no active plans to harm herself or others, she had had passive suicidal thoughts, including one such thought the week before. (*Id.*) Collins further stated that she hears male voices when she is alone, and they tell her to do bad things. (*Id.*) She also reported seeing shadow people "all the time." (*Id.*) Collins explained that she is paranoid and has hallucinations, both of which are causing her not to sleep. (*Id.* at 538–39.) Finally, Collins stated that as a result of her paranoia she stays home. (*Id.* at 538.) Collins acknowledged that this was the first time she was reporting these symptoms and explained that she did not previously report any of this to Nurse Practitioner Joseph because she feared being hospitalized. (*Id.*)

Collins continued to see Nurse Practitioner Joseph, with visits on October 25, 2017, February 21, 2018, July 5, 2018, and September 24, 2018. During these visits, Collins continued to report hearing male voices that belittle her and seeing shadowing people. (*Id.* at 492–93, 503–04, 516, 527.) Collins also continued

to report feeling depressed and paranoid that people were trying to hurt her, as well as experiencing mood swings and racing thoughts (although no longer daily). (*Id.*) Collins further continued to report that she remained at home as a result of her paranoia. (*Id.*) Each of the October 25, 2017, February 21, 2018, July 5, 2018, and September 24, 2018 visits report that Collins was not having any suicidal or homicidal ideations. (*Id.*) And by July 2018, Nurse Practitioner Joseph's reports no longer stated that Collins was experiencing hallucinations. (*Id.* at 492–93, 503–04.)

Collins also received health care from providers at the Friends and Family Health Center ("FFCH"). During her annual exam in June 2017, Collins' depression and anxiety screenings did not detect any problems. (*Id.* at 480.) Even so, the FFCH provider conducting Collins' exam referred her to their behavioral health group for follow-up. (*Id.* at 483.) Collins was seen by an FFCH behavioral health provider on August 5, 2017. (*Id.* at 624.) During this appointment, Collins "acknowledged symptoms of paranoia, auditory hallucinations and suicidal ideations with no plan or intent." (*Id.*) Collins also explained that she continued to experience a depressed mood and psychosis. The provider characterized Collins as "somewhat guarded, particularly surrounding symptoms and her desire to not be psychiatrically

hospitalized." (*Id.* at 624-25.) Following this appointment, Collins began meeting with FFHC Behavioral Health Care Coordinator Tia Nix approximately once per week. (*Id.* at 697.) During these meetings, Collins and Nix discuss Collins' current mental health status and treatment goals, among other things. (*Id.*)

Collins returned to FFHC for two additional behavioral health appointments on March 27, 2018 and September 4, 2018. In March, Collins saw a Licensed Clinical Social Worker ("LCSW") and reported feeling anxious and overwhelmed. (*Id.* at 622.) The LCSW observed that during the appointment Collins appeared "fidgety and anxious." (*Id.*) In September 2018, Collins' depression screening concluded that she suffered from "major depression." (*Id.* at 618.)

During her testimony before the ALJ on November 27, 2018, Collins testified that she continues to hear and see things, even when taking her medication. (*Id.* at 27.) She explained that she suffers from mood swings and remains paranoid that people are always behind her. (*Id.*) Collins testified that she continues to hear men's voices telling her to do bad things. (*Id.* at 27, 31.) Collins also stated that she has no friends, infrequently leaves the house, and, when she does leave, she is accompanied by her mom or sister. (*Id.* at 27-28, 31, 33.) Collins further testified that she has not always been forthright with Nurse Practitioner Joseph regarding the mental health symptoms she is experiencing. (*Id.* at

45.) Collins explained she held back because she did not want to be admitted to the hospital. (*Id.*)

In support of her continuing disability, Collins also submitted to the ALJ a medical opinion from Nurse Practitioner Joseph, dated November 15, 2018. (*Id.* at 602-05.) Nurse Practitioner Joseph's report concluded that Collins had only mild difficulties understanding and remembering simple instructions and carrying out the same. (*Id.* at 602.) Nurse Practitioner Joseph concluded that Collins experienced marked difficulties in the remaining areas, including understanding and carrying out complex instructions, making judgments on simple and complex work-related decisions, interacting with coworkers, supervisors, or the public, and responding appropriately to work situations. (*Id.* 602-03.) Nurse Practitioner Joseph's report explained that Collins is "scared and paranoid when she goes outside or in public," she "hears voices almost every day," and she "sees shadows of people and kids almost every day." (*Id.* at 603.) The report further explained that Collins "feels depressed and helpless all the time." (*Id.*)

On February 21, 2019 the ALJ issued her decision. (*Id.* at 70-78.) The ALJ concluded that Collins' disability ended on August 1, 2016 and she had not become disabled again since that date. (*Id.* at 70.) In reaching her decision, the ALJ followed the seven-step

evaluation process outlined in 20 C.F.R. 416.994. stated that depression screenings from FFHC during this same period were "consistently negative." (*Id.*) To assist in reaching her opinion the ALJ considered three medical opinions: (1) the 2016 opinion from Dr. Pittman; (2) the 2016 opinion from Dr. Taylor; and (3) the 2018 opinion from Nurse Practitioner Joseph. (*Id.* at 76.) The ALJ ultimately gave the greatest weight to Dr. Taylor's opinion. (*Id.* at 76.) She reasoned that Dr. Taylor's conclusions were consistent with Collins' medical records "when viewed as a whole." (*Id.*)

The ALJ gave little weight to Dr. Pittman's opinion, concluding the record did not support his assessment that Collins' disability was not severe. (*Id.*) The ALJ also gave little weight to Nurse Practitioner Joseph's opinion. (*Id.*) First she concluded that Nurse Practitioner Joseph was "not an accepted medical source." (*Id.*) She further explained that Nurse Practitioner Joseph's assessment was "inconsistent with her own medical status exam findings and mostly moderate diagnoses." (*Id.*) The ALJ also noted that Collins' visits to Nurse Practitioner Joseph were "infrequent" and "at most four times in a year." (*Id.*) She was also "mindful of the possibility that a treatment provider may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another." (*Id.*) The ALJ also

gave little weight to the Function Report completed by Ms. Sanders, because it was inconsistent with Collins' own report and the medical records at the time. (*Id.*)

Relying on Dr. Taylor's opinion and her own review of Collin's lengthy medical records, the ALJ concluded that Collins' disability ended on August 16, 2016. Collins appealed the ALJ's decision to the Agency's Appeals Counsel. On March 9, 2020, the Appeals Counsel denied Collins' request for review. (*Id.* at 1) On April 11, 2020 Collins filed her Complaint seeking review by this Court. (Dkt. No. 1.) On November 19, 2020 the Government moved for summary judgment. (Dkt. No. 18.)

## II. <u>**LEGAL STANDARD**</u>

Judicial review of the Agency's decisions is permitted pursuant to 42 U.S.C. § 405(g), which provides that the Agency's findings of fact are conclusive "if supported by substantial evidence." 42 U.S.C. § 405(g). Courts reviewing decisions under the substantial evidence standard look to an existing administrative record and ask, "whether it contains sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill,* 139 S.Ct. 1148, 1154 (2019) (internal quotations omitted). The threshold for evidentiary sufficiency is not high; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The reviewing court is

not "to reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the Commissioner." *Burmester v. Berryhill,* 920 F.3d 507, 510 (7th Cir. 2019) (citing *Lopez ex rel. Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003)). If substantial evidence supports the disability determination, the reviewing court must affirm even if "reasonable minds could differ" concerning whether the petitioner is disabled. *Id.*

### III. DISCUSSION

Collins argues that the ALJ failed to give proper weight to Nurse Practitioner Joseph's opinion. In response, the Government argues that the ALJ provided "at least five valid reasons for discounting the opinion of the nurse practitioner." (Mot. at 5, Dkt. No. 19.) The Court does not, however, reach an opinion on the proper weight that should be accorded Nurse Practitioner Joseph's opinion. Instead, the Court concludes that the ALJ improperly relied on Dr. Taylor's outdated 2016 opinion.

Nurse Practitioner Joseph's opinion provides the most up to date assessment of Collins' mental health. Under the Agency's regulations, however, for cases arising prior to March 27, 2017, Nurse Practitioners are not considered an "acceptable medical source." 20 C.F.R. § 416.902(a)(7). For this reason, and others, the ALJ gave little weight to Nurse Practitioner Joseph's opinions.

(Admin. R. at 76.) Instead, the ALJ gave great weight to Dr. Taylor's 2016 opinion. (*Id.*) As a basis for her reliance on Dr. Taylor's opinion, the ALJ explained that his assessment is "consistent with the records when viewed as a whole." (*Id.*)

Dr. Taylor's 2016 opinion could not have incorporated any of the reported changes in Collins' symptoms from 2017 to the present. Indeed, Dr. Taylor's 2016 opinion notes that Collins' medical records reflect that she "denied feeling depressed" and "denied having paranoia, hallucinations, or suicidal/homicidal thoughts." (*Id.* at 403.) But a review of Collins's treatment notes from 2017 to the present reveal significant and new developments in her reported symptoms, including reports of depression, hallucinations, and paranoia. (*See id.* at 492–93, 503–04, 516, 527, 538–39, 618, 622, 624–25.) The presence of these symptoms contradicts the factual basis for Dr. Taylor's opinion and thus bears on the criteria considered in forming his opinion. And the Seventh Circuit has consistently held that an ALJ "should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill,* 882 F.3d 722, 728 (7th Cir. 2018), *as amended on reh'g* (Apr. 13, 2018) (collecting cases). As a result, Collins' medical records from 2017 to the present "certainly could have altered [Dr. Taylor's]

conclusion regarding the existence and severity of [Collins'] affective disorder." *Id.* at 729. The Court thus concludes that the ALJ erred by relying on Dr. Taylor's opinion.

The ALJ's own analysis of the significance of Collins' increased symptoms does not change this outcome. (Admin. R. at 75.) In reaching a determination, the ALJ must "rely on expert opinions instead of determining the significance of particular medical findings themselves." *Moon v. Colvin,* 763 F.3d 718, 722 (7th Cir. 2014), *as amended on denial of reh'g* (Oct. 24, 2014). The ALJ observed that Collins first began reporting feeling depressed following the cessation of her benefits in August 2016. (*Id.*) The ALJ then downplayed Collins' reports of feeling depressed and paranoid and experiencing hallucinations, by noting that they were not consistently present during visits in 2017 and 2018. (*Id.*) She further observed that during her medical visits, providers reported Collins as appearing "alert, oriented, attentive, and cooperative." (*Id.*) But it was not for the ALJ to interpret the symptoms reflected in notes from Collins' visits with Nurse Practitioner Joseph and behavioral health professionals with FFHC. *Rohan v. Chater,* 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.")

For these reasons, the Court concludes that the record lacks sufficient evidence to support the ALJ's determination. We therefore vacate the ALJ's findings and remand to the Agency for a new mental-health assessment on which Collins' functional capacity reasonably can be determined.

## IV. CONCLUSION

For the reasons stated herein, the Court denies the Commissioner's motion for summary judgment (Dkt. No. 19), vacates the ALJ's findings and remands to the Agency for proceedings consistent with this opinion.

**IT IS SO ORDERED.**

                                                                Harry D. Leinenweber, Judge
                                                                United States District Court

Dated: 6/22/2021